(14 Misc. Rep. 222.)

## SILVERMAN v. SIMONS et al.

(City Court of Brooklyn, General Term. October 28, 1895.)

EVIDENCE—RELEVANCY.

On an issue as to whether a transfer of goods by a debtor to plaintiff was in payment of a loan alleged to have been made by plaintiff to the debtor, plaintiff testified that, shortly before the alleged loan, $1,000 had been given him as a wedding present, and that he deposited it in a certain bank; that he loaned it to the debtor, giving him a check on the bank for $500, and $500 in bills, which he had drawn from the bank. He offered in corroboration of his testimony a pass book of the bank showing a deposit of $1,019.46, with a number of items charged, among which were two of $500 each, without showing to whom the checks represented by such items were made payable. *Held*, that the pass book was not admissible.

Appeal from trial term.

Action by Max Silverman against Sanford Simons and others. There was a judgment in favor of plaintiff, and defendants appeal. Reversed.

Argued before CLEMENT, C. J., and OSBORNE, J.

Blumenstiel & Hirsch, for appellants.

Chas. J. Patterson, for respondent.

OSBORNE, J. This action was brought against the late sheriff of Kings county to recover damages for the alleged conversion of certain personal property of which the plaintiff claimed to be the owner, and the present defendants, as indemnitors of the sheriff, were substituted in his stead. Plaintiff obtained a verdict; and from the judgment entered thereon, and the order denying a motion for a new trial, this appeal is taken.

It appears from the evidence that plaintiff claimed that the personal property in question had been transferred to him by the insolvent firm of B. Sturman & Son, in payment of an alleged balance of indebtedness for moneys loaned at various times by the plaintiff to said firm. Defendants sought to show that the alleged loans were fictitious, and that the transfer of said property to plaintiff was in fraud of the creditors of B. Sturman & Son. Plaintiff testified that the first loan to Sturman & Son was made by him early in October, 1892; that it consisted of a check for $500 drawn by him on the East Side Bank, and also of the sum of $500 in bills likewise drawn from the same bank; and that this sum of $1,000 was a wedding present from his wife's uncle on the occasion of his marriage, in September, 1892, and which he had deposited in said bank. With a view of corroborating plaintiff's evidence in this regard, the learned counsel for the plaintiff offered in evidence the "bank book of the East Side Bank, showing the deposit of the $1,000 and the draft of this $500 check." Plaintiff testified with reference to the book as follows:

"Examined by Mr. Patterson: Q. Did you have an account with the East Side Bank? A. Yes, sir. Q. Did you have a pass book in which the bank entered the deposits as you made them? A. Yes, sir. Q. Is this the pass book? A. That is the book. Q. Did you receive from the bank checks back? A. Yes, sir. Q. Are they entered on the other side? A. Yes. Q. That was the original book of account between you and the bank? A. Yes, sir. Mr. Patterson: I offer it in evidence. By Mr. Hirsch: Q. Do you know in whose handwriting these entries are? A. No, sir; I don't know. Q. Did you ever see anybody write in this book? A. No, sir; that is on the other side, because I didn't use it no more. Q. There are entries in the book on the other side? A. No, sir; that is the end of it. Q. The first four or five pages, do you know whose handwriting they are? A. No, sir. Q. Did you ever see any entry made in that book? A. No, sir; nobody made it except the— Q. (by Mr. Patterson). Except what? A. Except the one in the bank. Q. But you did not see it made? A. I gave that to them to correct the book. Q. (by the Court). And they handed it back to you? A. They handed it back to me. Q. With the entry in it? A. The same book,—the bookkeeper. By Mr. Patterson: You handed this in with your money? A. Yes. Q. And they handed back the book to you with your money entered in? A. Yes. Mr. Patterson: I will offer the first five pages. (Objected to, as incompetent and not the best evidence. Objection overruled. Defendants except.)"

These five pages of the bank book admitted in evidence consisted of entries of various sums at various dates, purporting to be de-

posits commencing September 27, 1892, with the sum of $1,019.46, and having an initial opposite each sum (presumably of the receiving teller); while alongside of these entries, and on the same pages, was a list of various amounts placed under each other after the usual manner of balancing a bank book (including two items of $500 each), and which amounts are supposed to represent the various checks drawn by the depositor.

We are of opinion that this bank book was erroneously admitted in evidence, and that the exception to its admission was well taken. We are at a loss to see how the bank book was admissible as constituting evidence of the facts sought to be proven. The fact that the bank book indicated that on September 27, 1892, plaintiff made a deposit of $1,019.46, does not prove that plaintiff acquired possession of $1,000 as a wedding gift, and that he deposited that particular amount in the East Side Bank; neither do the two sums of $500, set down in a long column of figures, show that plaintiff drew a check for $500, and loaned it to Sturman & Son, as he testified. The bank book was offered and received with a view of corroborating plaintiff's evidence on these particular points, and yet, for aught that appears to the contrary, plaintiff might have received this sum of $1,019.46 from some other source, and used the check for $500 for some purpose entirely foreign to that which he testified to. When the book was offered, and plaintiff was examined with reference to it, no attempt was made to show by his evidence that the item of the deposit of $1,019.46 and the item of the $500 check were the same items to which he had previously testified. The book having been admitted in evidence, the jury was left to assume or infer that the items in question corroborated plaintiff's evidence with reference to those transactions; and that the bank book was not without influence on the jury is shown by the fact, as appears from the appeal book, that it was sent to the jury room at the request of the jury. Entertaining these views, we have not considered it necessary to pass upon the point raised by the learned counsel for the appellants that the entries in the book were not verified by some clerk or official of the bank. We are of opinion that, by reason of the error in admitting the pass book in evidence, the judgment and order denying motion for new trial should be reversed, with costs to abide the event.